## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**SOL HOKE,**

     **Plaintiff,**

**vs.**                           **CASE NO: 4:21-CV-00128-WS-MAF**

**SHAVONNA MURPHY, et al.,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Sol Hoke, an inmate proceeding *pro se*, initiated this civil rights action, pursuant to 42 U.S.C. § 1983, and was granted leave to proceed *in forma pauperis*. ECF Nos. 7, 8, and 24. This Cause is currently before the Court upon Hoke's latest amended complaint. ECF No. 23. Hoke, as a *pro se* filer, is entitled to liberal construction. Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Hoke sues Defendants alleging constitutional violations for events that occurred during his commitment at a state hospital. Since Hoke did not indicate in which capacity he sues Defendants, the Court liberally construes his complaint as suing Defendants in both their individual and official capacities.

This case is presently before the Court for screening of the amended complaint, ECF No. 23. See 28 U.S.C. § 1915(e)(2)(B)(i) and 28 U.S.C. § 1915A. For the reasons stated below, the Undersigned recommends that this matter PROCEED, in part, against Defendants Murphy, Baluga, and Mitchell. Claims against the state hospital should be DENIED.

## I.   Allegations of Hoke's Amended Complaint, ECF No. 23.

Hoke filed a civil rights action for events that occurred during his civil commitment at the Florida State Hospital (FSH) against Nurse Shavonna Murphy; Medical Director, Dr. Josefina Baluga; Dr. Weaver Mitchell; and FSH.[1] Hoke alleges his constitutional rights were violated as the victim of persistent sexual abuse by Defendant Murphy. As best can be determined, Hoke alleges violations of his Eighth– and Fourteenth Amendment rights and state tort claims against Defendant Murphy. Hoke alleges that Defendant Baluga's failure to protect him from Murphy's repeated abuse amounted to an Eighth Amendment violation. Hoke asserts that Defendant Mitchell's deliberate indifference to his psychological well-being amounted to an Eighth Amendment violation.

---

[1] Florida State Hospital (FSH) is located in Chattahoochee, FL. Hoke only refers to it as "State Hospital" in Chatahoochee. ECF No. 23. Florida State Hospital will be referred to as "FSH" in this report. The Clerk of Court is directed to correct the docket to reflect the proper name of the institution, Florida State Hospital.

Case No: 4:21-CV-00128-WS-MAF

Hoke alleges that, while he was a patient at FSH, he was sexually assaulted by Murphy, an on-duty nurse at the time. ECF No. 23. Hoke arrived at the hospital on December 18, 2017. ECF No. 23, p. 7. Two weeks after arriving, Murphy entered Hoke's room and fondled his penis while he was heavily sedated with anti-psychotic medication. Id. Hoke came to slight consciousness during the incident. Id., p. 8. Murphy made "a declaration that she was washing him so he can be clean." Id.

Two weeks after the initial sexual encounter, Murphy entered Hoke's room, again, while he was heavily sedated on medication. ECF No. 23, p. 8. Defendant Murphy pulled Hoke's pants down and engaged in vaginal intercourse. Id. Murphy then hit Hoke with her radio "to wake him up so he can get hard." Id. Murphy told Hoke that if he reported her actions, he would suffer "severe reprisal" and she would increase his medication to continue "to rape [him]." Id. Murphy allegedly stated, "Like you know you like, you my man! We are made for each other, I love you, and make sure you treat me right." Id. Hoke alleges that Murphy continued to rape him for the remainder of his commitment at FSH, which concluded on April 10, 2018. Id., pp. 2, 9. Allegedly, Murphy entered Hoke's room for an hour at a time, which violates FSH Rules. Id. at 13.

Hoke alleges Murphy continued to harass him and his family while he was in custody at the Hillsborough Sheriff Detention Facility. ECF No. 23, p. 11. Hoke states that "there are numerous phone calls telling Ms. Murphy to leave him and his family alone"; and provides the dates of the calls. Id. Murphy allegedly visited Hoke in jail "to convince [him] to be her man." Id.

Hoke alleges Defendant Baluga failed to protect him from the abuse occurring at FSH. According to Hoke, Baluga was aware of abuse and "refused to take disciplinary action against both of her employees and allowed the criminal activities to continue[] under her care." ECF No. 23, p. 3. Hoke states that FSH has surveillance cameras to supervise the employees, patients, and detainees. Id., p. 10. The surveillance cameras are "under the care and protection of . . . Baluga, who has closed her eyes to th[is] kind of sexual abuse (rape)." Id. Hoke asserts that Baluga was aware of the abuse from the "camera recording, [and] other staff/employees bringing to her attention the criminal activity and violation of [FSH] policy." Id., p. 13. Hoke asked Baluga for the grievance forms to formally complain about Murphy's assaults. Id. Baluga refused to acknowledge Hoke and did not investigate his complaint. Id. Hoke claims he was "afraid, ashamed, and confused because of the situation … and [suffered] permanent damages to [his] mental

condition." Id., pp. 8, 12.  He suffered mentally and physically and attempted to commit suicide. Id., p. 4.

Hoke alleges violations of his rights under the Eighth Amendment; Fourteenth Amendment; the Americans with Disabilities Act; mental and emotional injuries; and seeks to pursue the state tort claims of sexual harassment, sexual battery, and battery. Id., p. 16. As relief, Hoke seeks an injunction, an order "forcing the defendants to stop neglecting rules, regulations, and laws established by the United States of America"; and $50,000,000 in compensatory damages. Id., p. 17.

## II.  Standard of Review

A federal court is required to conduct an initial screening of a *pro se* complaint to determine whether the action: (1) is frivolous or malicious or fails to state a claim on which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e). A claim is frivolous, and must be dismissed, when it "lacks an arguable basis either in law or in fact." Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008). A district court also may dismiss a complaint if the facts as pled do not state a claim for relief that is plausible on its face. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although a *pro se* litigant's allegations are entitled

to the benefit of liberal construction, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." GJR Invs. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by Iqbal, 556 U.S. 662).

"Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. Conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true." Iqbal, 556 U.S. at 681. To escape dismissal, the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." Id. "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'. . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 678).

### III.   Hoke's Claims Against Florida State Hospital Should Be Dismissed as Improperly Pled and under Respondeat Superior.

A. <u>Shotgun Pleadings are Impermissible.</u>

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotation marks and alterations omitted). "Further, the allegations in the complaint 'must be simple, concise, and direct,'" Fed. R. Civ. P. 8(d)(a), and the complaint must 'state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances,' Fed. R. Civ. P. 10(b)." <u>LaCroix v. W. Dist. of Ky.</u>, 627 F. App'x 816, 818 (11th Cir. 2015).

"A 'shotgun pleading' - one in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'— does not comply with the standards of Rules 8(a) and 10(b)." Id. (citations omitted). The Eleventh Circuit "has repeatedly condemned shotgun pleadings." Id. (citing <u>PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.</u>, 598 F.3d 802, 806 n.4 (11th Cir. 2010)). Vague pleadings which assert legal conclusions rather than facts violate Rule 8 and are insufficient to proceed.

The Eleventh Circuit has identified four rough types or categories of shotgun pleadings. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (citations omitted). The most common type is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Id. at 1321. Next, is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. at 1322. The third type of shotgun pleading does not separate "into a different count each cause of action or claim for relief." Id. at 1323.

"Fourth, and finally, there is" the pleading which asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. "The unifying characteristic . . . is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id.

As narrated above, Hoke brings forward claims against FSH but provides no set of facts for any acts or omissions attributable to the hospital. Hoke must allege the facts which support the claim raised against each

defendant. Legal conclusions are insufficient. Several times, the Court ordered Hoke to amend his complaint to cure this deficiency. ECF Nos. 4, 9, and 13. Hoke failed to do so with the claims against FSH, therefore, the claims should be dismissed as improperly pled. Even if Hoke were to amend, the claim would likely fail under a theory of *respondeat superior*.

B. Hoke's Claims Fail under a Theory of Respondeat Superior.

To the extent Hoke's claims raised against FSH would be pursued under a theory of vicarious liability, "liability under § 1983 may not be based on the doctrine of *respondeat superior*." Craig v. Floyd County, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003); see Denno v. Sch. Bd. of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000), cert. den'd, 531 U.S. 958 (2000). Instead, a government entity may be liable "only where the [government entity] itself causes the constitutional violation at issue." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Hoke must establish that an official policy or custom was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978). The custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed

to stop it." Craig, 643 F.3d at 1310 (citation omitted). Because Hoke's allegations present no facts to support these claims, the claim against FSH is due to be DISMISSED.

## IV.   Hoke's Claims Against Defendant Murphy Should Proceed.

### A. Sexual Assault in Violation of the Eighth Amendment

The Eighth Amendment explicitly prohibits the imposition of cruel and unusual punishment. It is well-settled that prison officials violate the Eighth Amendment through "the unnecessary and wanton infliction of pain." Farmer v. Brennan, 511 U.S. 825, 835 (1994). The Eleventh Circuit recognizes that "severe or repetitive sexual abuse" by prison officials can violate the Eighth Amendment. Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006). "The lack of serious physical injury, considered in a vacuum, cannot snuff out Eighth Amendment sexual-assault claims." Sconiers v. Lockhart, 946 F.3d 1256 (11th Cir. 2020). As narrated above, Murphy's repeated acts of sexual intercourse with Hoke, while he was medicated, are unreasonable and sufficiently present a claim of excessive use of force under § 1983. The Eighth Amendment claim against Defendant Murphy should PROCEED.

### B. State Tort Claims of Sexual Assault and Battery

The Eleventh Circuit recently outlined the state tort claims of assault and battery as occurring within the context of a Section 1983 action: an

assault is "an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril." Sullivan v. Atl. Fed. Sav. & Loan Ass'n, 454 So. 2d 52, 54 (Fla. 4th DCA 1984). A battery is "the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." Quilling v. Price, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005). To determine whether an officer's actions are an assault and battery, courts inquire whether the officer's use of force was reasonable. City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) (applying the reasonableness standard to battery); City of Fort Pierce v. Cooper, 190 So. 2d 12, 14 (Fla. 4th DCA 1966) (applying the reasonableness standard to assault). Pena v. Marcus, 715 F. App'x 981, 988 (11th Cir. 2017). Only where a plaintiff's allegations are sufficient to state a claim under § 1983 for excessive force are they are also sufficient to state the parallel claim of battery under Florida law. Detris v. Coats, 523 F. App'x 612 (11th Cir. 2013) (citing City of Miami v. Sanders, 672 So. 2d at 47 (holding in analogous context that "[i]f excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery"). Sexual assault amounts to tortious conduct in Florida. Malicki v. Doe, 814 So. 2d 347 (Fla. 1st DCA 1997). "Florida law

equates sexual battery with an intentional tort." <u>Doe v. Celebrity Cruises, Inc.</u>, 394 F.3d 891 (11th Cir. 2004) (citations omitted). Because Hoke has sufficiently alleged an Eighth Amendment violation, it follows that Hoke's state tort claims of assault and battery against Defendant Murphy should PROCEED.

C. <u>Mental and Emotional Damages</u>

The Eleventh Circuit emphasized that physical injuries are not required when a plaintiff is seeking damages resulting from a sexual act:

> Sexual abuse 'has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.' <u>Graham v. Sheriff of Logan Cty</u>., 741 F.3d 1118, 1122-23 (10th Cir. 2013) (citation and quotation marks omitted). Nor does it comport with contemporary standards of decency. Congress itself implicitly recognized as much in 2013, when it amended the Prison Litigation Reform Act ('PLRA') to allow prisoners to recover damages 'for mental or emotional injury suffered while in custody[,] without a prior showing of physical injury,' when the prisoner can demonstrate 'the commission of a sexual act' as the basis for the damages he seeks. <u>See</u> 42 U.S.C. § 1997e(e) (2013).

Accordingly, Hoke's claims for mental and emotional damages, in addition to compensatory damages, should PROCEED against Defendant Murphy.

D. <u>First Amendment Violations</u>

The First Amendment forbids prison officials from retaliating against inmates for filing grievances about the conditions of confinement. <u>O'Bryant v. Finch</u>, 637 F.3d 1207, 1212 (11th Cir. 2011). "To state a claim for retaliation, a prisoner must allege that '(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance].'" <u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 578 F. App'x 836, 839-40 (11th Cir. 2014) (citing <u>O'Bryant</u>, 637 F.3d at 1212). At this stage of the proceedings, the Court accepts Hoke's allegations in his sworn complaint as true. Hoke alleges that Defendant Murphy told him that he would be "a victim of severe reprisal" if he reported her assaults. ECF No. 23, p. 3. Hoke has alleged sufficient facts so that the First Amendment claims against Defendant Murphy should PROCEED.

## V. Hoke's Claims Against Defendant Baluga for Failure to Protect in Violation of the Eighth Amendment Should Proceed.

Next, construed liberally, Hoke sues Defendant Baluga for failure to prevent harm. It is well settled that a prison inmate has Inmates have "a constitutional right to be protected from the constant threat of violence and

from physical assault by other inmates." <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986). "Having stripped of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994). In order to succeed on a "failure to protect" claim and meet the objective component of the court's inquiry, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Id</u>. For liability to attach, there "must have been time to intervene" in the use of force. <u>Marantes v. Mikami-Dade County</u>, 649 F. App'x 665, 672 (11th Cir. 2016).

Hoke alleges that Baluga, as the medical director and Murphy's supervisor, was aware of the sexual abuse and failed to intervene. ECF No. 23, p. 3. Hoke alleges that "Baluga was aware… [Nurse Murphy] conducted[ed] sexual battery on patients with mental disorder[s] and taking advantage of heavily sedated patients with no way to fight back." <u>Id</u>. Hoke states that Baluga failed to monitor the surveillance system that records each patient. <u>Id</u>., p. 13. Further, Baluga "refused to take disciplinary action against both of her employees and allowed the criminal activities to continue under her care." <u>Id</u>., p. 3. Hoke attempted to exhaust administrative remedies by requesting "grievance forms to make a formal complaint on his sexual

battery"; however, Baluga "refused to acknowledge" them and did not "investigate [Hoke's] complaint." Id., p. 13. The allegations, at this stage, are presumed true and sufficient to PROCEED against Defendant Baluga.

## VI.  Hoke's Claims Against Defendant Weaver-Mitchell Should Proceed.

### A.  Deliberate Indifference to a Serious Medical Need

There is an "obligation to provide medical care for those who are incarcerated whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). Delayed or denied access to medical care for inmates resulting in physical or mental injury constitutes a violation of constitutional rights. Id. To sufficiently state a claim, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). The medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks omitted). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" McElligott v. Foley, 182 F. 3d 1248, 1254 (11th Cir. 1999).

A deliberate-indifference claim contains both an objective and a subjective component. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). First, Hoke must prove the need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," which "if left unattended, poses a substantial risk of serious harm." Id.

Second, the prisoner must prove the defendant had (1) subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that is more than mere negligence. Id. Citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence is insufficient to support a claim. Farmer, 511 U.S. at 835-36. As a result, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. See Estelle, 429 U.S. at 106. "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant

to the conscience of mankind.'" <u>Estelle</u>, 429 U.S. at 105-06. <u>See also Wilson</u>, 501 U.S. at 297-98.

The Eleventh Circuit instructs that, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." <u>Farrow v. West</u>, 320 F.3d 1235 (11th Cir. 2003) citing <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1425 (11th Cir. 1997). The "deliberate indifference" standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or inadequate medical care; prison personnel fail to respond to a known medical problem; or prison doctors take the easier and less efficacious route in treating an inmate. <u>See</u>, <u>e.g.</u>, <u>Harris v. Coweta Cty.</u>, 21 F.3d 388, 393-94 (11th Cir. 1994) (indicating prison officials may nonetheless act with deliberate indifference for delaying treatment beyond a tolerable point); <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating failure to respond to known medical problems or to take a less efficacious course of treatment can amount to deliberate indifference).

Hoke alleges that Mitchell refused to treat or help him for "conditions of fear of women [and] physical trauma." ECF No. 23, p. 4. Hoke requested mental health treatment by submitting five sick-call forms. <u>Id</u>., p. 6. Hoke's

lack of treatment has exacerbated his mental health condition so much so that he has attempted "suicide by cutting his left arm numerous of times." Id., p. 4. Hoke alleges that Mitchell's deliberate indifference to a serious medical need has "caused Plaintiff mental anguish and severe trauma." Id. Assuming these facts are true, the deliberate indifference claims against Defendant Weaver Mitchell should PROCEED.

## VII.   Miscellaneous Claims

### A. Injunctive Relief and Class Action Certification

Hoke seeks an injunction against Defendants to prevent future constitutional violations against citizens; however, it is well settled that a *pro se* prisoner cannot fairly and adequately represent the interests of others in a class action lawsuit. Bass v. Benton, 408 F. App'x 298, 299 (11th Cir. 2011); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). To the extent Hoke seeks to proceed as a representative for a class action, the request should be denied. No class certification should be granted.

Hoke's claim for injunctive relief is moot because he is no longer housed at FSH. See Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007) (recognizing the "general rule . . . that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief"), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277

(2011). Hoke might have a basis for injunctive relief against certain defendants, however, if were transferred back to FSH.

### B. ADA Claims

In order to state a claim under the ADA, a plaintiff must allege (1) that he or she suffers from a disability, (2) is a qualified individual, and (3) that a "covered entity" discriminated against him on account of his disability. Cramer v. Florida, 117 F.3d 1258 (11th Cir. 1997) (citing Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 (11th Cir. 1997)). Although Hoke cites to the ADA, he provides no set of facts to support a claim of discrimination based on any disability he may have had while at FSH. Therefore, the ADA claim should be DISMISSED.

## VIII.   Conclusion and Recommendation

For the reasons stated above, it is respectfully RECOMMENDED that:

1.     The claim against Defendant Murphy for sexual harassment and severe sexual abuse in violation of the Eighth Amendment PROCEED.

2.     The claim for violation of the First Amendment against Defendant Murphy should PROCEED.

3.     The claim for mental and emotional damages against Defendant Murphy should PROCEED.

4.    The state tort claims for sexual assault and battery against Defendant Murphy should PROCEED.

5.    The claims against Defendant Florida State Hospital should be DISMISSSED as improperly pled and under a theory of *respondeat superior.*

6.    The claim against Defendant Baluga for failure to protect in violation of the Eighth Amendment should PROCEED.

7.    The claim against Defendant Mitchell for deliberate indifference to a serious medical need in violation of the Eighth Amendment should PROCEED.

8.    The ADA claim should be DISMISSED for failure to state a claim.

9.    The request for an injunctive relief should be DENIED.

10.   The request for class action certification should be DENIED.

11.   Defendants Murphy, Baluga, and Mitchell should be served with the operative complaint.

12.   The Clerk of Court is directed to correct the name of the state hospital to "Florida State Hospital."

**IN CHAMBERS** at Tallahassee, Florida, on October 22, 2021.

s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).