**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**SOL HOKE,**

    **Plaintiff,**

vs.                                       **Case No. 4:21-CV-00128-WS-MAF**

**SHAVONNA MURPHY,
et al.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Sol Hoke, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this civil rights case, pursuant to 42 U.S.C. § 1983, and filed a third amended complaint. ECF Nos. 1, 23. The Court determined the operative complaint was sufficient for service and that certain claims would proceed. ECF Nos. 23, 28. Defendants, Shavonna Murphy and Dr. Josephine Baluga, filed a joint motion to dismiss.[1] ECF No. 82. Plaintiff filed a Response. ECF No. 87. The case is now ripe for review. After careful consideration, for the reasons stated below, Defendants' motion to dismiss should be denied, in part, and granted, in part. This case should proceed.

---

[1] The Court dismissed the claims against Florida State Hospital and Dr. Mitchell. See ECF Nos. 28, 29, 49, 50. Only Murphy and Dr. Baluga remain in the case.

**I.   Standard of Review – Motions to Dismiss**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. Id. at 679. Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Twombly, 550 U.S. at 555 (citation omitted). The factual allegations must adequately "raise a right to relief above the speculative level." Id. (citations omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by* Mohamad v. Palestinian Auth., 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citing SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988)).

## II. Plaintiff's Third Amended Complaint, ECF No. 23.

Two defendants remain in this case, Murphy, an on-duty nurse, and Dr. Baluga, the former medical director at Florida State Hospital (FSH). Hoke alleged that, during his commitment at FSH[2], Murphy repeatedly raped him while he was heavily sedated with anti-psychotic medication.[3] ECF No. 23.

Hoke arrived at FSH on December 18, 2017; and two weeks later, Murphy entered his room and fondled his penis. Id., p. 7. Murphy explained that she was cleaning him. Id. About two weeks later, Murphy entered Hoke's room, pulled down his pants, and engaged in vaginal intercourse. Id., p. 8. Allegedly, Murphy hit Hoke with her radio to wake him up. Id. Murphy threatened, if Hoke reported her, he would suffer "severe reprisal" and she would increase his medication to continue "to rape [him]." Id. Murphy

---

[2] FSH is formerly the Chattahoochee Mental Health Institution. See ECF No. 1, p. 6.

[3] Hoke claimed he was a pretrial detainee at the time of his commitment. See ECF No. 1, p. 4. Pursuant to Fed. R. Evid. 201, the Court takes notice that Hoke is no longer a pretrial detainee; he is serving a life sentence at Jefferson Correctional Institution. See Florida Department of Corrections, Corrections Offender Network.

continued to rape Hoke until he left, on April 10, 2018. Id., pp. 2, 9. Murphy was in Hoke's room for an hour at a time in violation of the rules. Id., p. 13. When Hoke transferred to a county jail, Murphy continued the harassment by visiting him and trying "to convince him to be her man." Id., p. 11.

Hoke claims Dr. Baluga knew of the assaults, failed to protect him, "refused to take disciplinary action against" Murphy, "and allowed the criminal activities to continue." Id., p. 3. The surveillance cameras at FSH, which are used to observe staff, are under Dr. Baluga's supervision. Id., p. 10. Dr. Baluga failed to monitor the surveillance system video, ignored staff and patient reports to her about the abuse, and ignored Hoke's requests for grievance forms to officially report the abuse. Id., pp. 3, 10, 13. Dr. Baluga refused to acknowledge Hoke and did not investigate his complaints.

As a result of the ongoing sexual abuse, Hoke suffered "permanent" psychological damage, physical suffering, and attempted suicide. Id., pp. 4, 8, 12. Hoke seeks an injunction; an order "forcing the defendants" to abide by the law; and $50,000,000 in compensatory damages. Id., pp. 17.

## III. Defendant's Motion to Dismiss, ECF No. 82.

Essentially, Defendants raise three main arguments (1) official capacities claims fail for various reasons, (2) because official capacity claims fail, injunctive relief and monetary relief is unavailable, and (3) the claims

should be dismissed for failure to exhaust administrative remedies. ECF No. 82. Defendants did not provide any exhibits in support. The basis for the motion to dismiss focuses primarily on the official capacity defenses. They attempt to "reserve the right to make arguments for dismissal in their respective individual capacities should the Court determine that Plaintiff has sued them in their respective individual capacities." ECF No. 82, p. 10, n. 2.

Defendants also submit other arguments and reference the multiple amendments filed by Hoke, although only the third amended complaint is the operative complaint and was the subject of the Court's screening order. They argue Hoke lacks standing because he did not allege or show that Defendants caused any injuries, that there were any threats of injury certainly impending, or that Defendants have the power to redress them. ECF No. 82, pp. 6-9. Because Defendants are no longer employed at FSH and Hoke left in 2018, then his claims are ambiguous and moot; and the requests for injunctive- or declaratory relief should be denied. Id., pp. 7, 9-10.

## IV. Hoke's Response, ECF No. 87

Hoke maintains he has standing and suffered mental and emotional damage that is "fairly traceable" to the events he described. ECF No. 87, p. 3. Hoke claims he is entitled to damages and is currently undergoing regular mental health treatment. Id. Hoke concedes he is not entitled to

injunctive or declaratory relief because the Court resolved the issues, he is not at FSH, and Defendants no longer work there. Id., p. 4. Hoke argues his claims are ripe; and the Court has jurisdiction as is clear from the Report and Recommendation that was adopted by the Court. Id., p. 5. Hoke submits Defendants cannot preserve a right to raise individual capacity defenses because the Court construed his complaint to include those claims. Id.

Hoke argues that Defendants' remaining arguments were addressed by the Court at screening. Id., p. 7. Hoke states he provided evidence supporting his claims in the form of a disc to the Court and by previously providing exhibits including his mental health record. Id., pp. 8-9. This Court is not in receipt of any disc. If Hoke sent a supporting disc to the Court, he would be required to provide a copy of the same to Defendants. Still, this case is not at the discovery stage. Hoke did not address the matter of whether he properly exhausted his administrative remedies.

**V.   Discussion.**

   A. <u>The Injunctive- and Declaratory Relief Claims Were Dismissed; and Hoke Sued Defendants in Their Individual- and Official Capacities.</u>

Some of Defendants' arguments are moot. They argue the injunctive- and declaratory relief claims should be dismissed. ECF No. 82, p. 7. The Court dismissed those claims at screening. <u>See</u> ECF No. 28, pp. 18-19.

Defendants attempt to reserve the right to raise individual capacity arguments. Hoke filed the operative complaint, ECF No. 23, which supersedes and replaces all previous complaints. See Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1345 n. 1 (11th Cir. 1999) (citing Dussouy v. Gulf Coast Inv. Corp., 660 F.3d 594, 601 (5th Cir. 1981). Before ordering service, the Court adopted the undersigned's Report recommending certain claims proceed. ECF Nos. 28, 29. Hoke's complaint was liberally construed "as suing Defendants in . . . their individual and official capacities." ECF No. 28, p. 1. Liberal construction is required. See Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Defendants erroneously posit they were sued solely in their official capacities.

Hoke is correct that Defendants abandoned defenses they fail to present here. Rule 12(g)(2) of the Federal Rules of Civil Procedure limits "defenses that can be raised for the first time in a second or successive motion to dismiss under Rule 12." Brooks v. Powell, 706 F. App'x 965, 968 (11th Cir. 2017). "Specifically, the rule says: 'Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.'" Id. Thus, "a party

cannot raise a defense in a second Rule 12 motion that it failed to raise in its first Rule 12 motion." Id.; see also Ford v. Hayes, No. 3:15-CV-907-J-32JRK, 2018 WL 3831167, at *6, n.8 (M.D. Fla. Aug. 13, 2018) (finding that defendants "forfeited the right to raise the defense in a subsequent motion" to dismiss); Oliver v. Whitehead, No. 3:14-CV-1506-J-39JRK, 2017 WL 5187752, at *2 (M.D. Fla. Nov. 9, 2017) (rejecting exhaustion defense raised in summary judgment motion because it was not raised in prior motion).

"The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground.'" Brooks, 706 F. App'x at 969 (quoting Ennenga v. Starns, 677 F.3d 766, 773 (7th Cir. 2012). This is precisely what Defendants hope the preservation of the individual capacity arguments will accomplish. The Rule prohibits that strategy. No good cause exists when the Court determined Defendants were sued in both capacities. This also affects the argument that Hoke did not properly raise a First Amendment claim. ECF No. 82. Nothing counters Hoke's allegation; they cannot preserve the argument; and the Court determined the First Amendment claim against Murphy was supported by sufficient facts.

B. <u>Hoke is not required to specially plead exhaustion of his administrative remedies.</u>

According to Hoke, he attempted to exhaust his administrative remedies. He requested grievance forms, but staff, including Dr. Baluga, refused to acknowledge him or investigate and Murphy threatened to drug him and continue to rape him if he reported the abuse. ECF No. 23. Hoke's account remains consistent throughout his attempts to submit a legally sufficient complaint. <u>See</u> ECF Nos. 1, 6, 12, 23. At this stage, Hoke's allegations are presumed to be true. True, exhaustion is mandatory under the Prison Litigation Reform Act (PLRA); however, "it is an affirmative defense" -- inmates are not required to specially plead or demonstrate exhaustion in their complaints. <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (citations omitted). Prisoners "must exhaust available remedies" but "need not exhaust unavailable ones." <u>Ross v. Blake</u>, 578 U.S. 632, 642 (2016). A remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u> at 644.

Defendants argue that Plaintiff did not allege how he informed anyone about the abuse or how he was thwarted through fear or lack of access to forms. ECF No. 82, pp. 11-12. "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are

those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (citing Harris v. Garner, 216 F.3d 970, 981 (11th Cir. 2000). In his initial complaint, Hoke checked "no" to the questions relating to whether FSH had a grievance procedure or one that covered his claims. ECF No. 1, p. 6. Hoke also checked "no" to the questions asking if he filed a grievance at the facility or any other correctional institution. Id., p. 7. But this is not the end of the inquiry. In the follow-up questions, Hoke explained his attempts to report the abuse. Id. Hoke stated he reported to FSH and the jail that he "was a victim of sexual battery," "nothing came of the grievance," "HCSO has an unfair grievance process that basically doesn't exist at all . . . does not cover sexual battery of inmates," and that he reported the abuse to the Hillsborough County Sheriff's Office. Id., pp. 7-8. Hoke states that somehow his report resulted in a criminal investigation; Murphy was terminated, arrested, and charged. Id., p. 12.

In the first amended complaint, Hoke repeated Murphy was terminated for her abuse and was arrested and charged; he was denied access to grievance forms but did file one once transferred to Hillsborough County Jail. ECF No. 6, pp. 5-6. Hoke reiterated the same in his second amended complaint. ECF No. 12, pp. 5-6. In the operative complaint, Hoke stated he tried to exhaust in person, on the phone, and submitted sick call forms; he

repeated that Murphy threatened him, he notified law enforcement, and requested grievance forms from Dr. Baluga but was refused. ECF No. 23, pp. 2-3, 6, 13. Hoke did not elaborate; but he is not required to do so.

Defendants carry the burden to show that remedies exist(ed) that Hoke did not use. Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015). There is no evidence in the record suggesting that any administrative remedies were available to Hoke. Defendants submitted no exhibits in support and made no attempt to describe the grievance procedure at FSH, the proper steps to appeal (if there was an option), whether any time restrictions apply, or how reporting abuse to state law enforcement is a requisite for exhaustion.

There are no facts for the Court to consider other than Hoke's assertions in his complaint, which are presumed to be true. Shifting the burden of proving exhaustion to Hoke and then penalizing him "for failing to take advantage of remedies the defendants failed to prove were available" is impermissible. See White v. Berger, 709 F. App'x 532, 542 (11th Cir. 2017); Jones v. Bock, 549 U.S. 199, 203-04 (2007). Finally, *sua sponte* dismissal was not appropriate because it was not entirely clear from the face of the initial complaint (or for that matter any of the amended complaints) Hoke failed to exhaust his administrative remedies. See Burns v. Warden,

USP Beaumont, 482 F. App'x 414, 416 (11th Cir. 2012). Defendants failed to meet their burden that dismissal for failure to exhaust is warranted.

C. The Official Capacity Claims Warrant Dismissal

The official capacity claims against Murphy and Dr. Baluga were not fully resolved at the time of screening. Florida's sovereign immunity extends to its agencies, subdivisions, or officers. See Alabama v. Pugh, 438 U.S. 781, 782 (1978); Fitzgerald v. McDaniel, 833 F.2d 1516 (11th Cir. 1987). That "bar exists whether the relief sought is legal or equitable." Papasan v. Allain, 478 U.S. 265, 276 (1986). Naming a government official in his official capacity is the equivalent of naming the governmental entity itself. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). State officials may be sued in their official capacity when the suit alleges a constitutional violation by the official, acting in his official capacity and seeks only prospective injunctive relief. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011). However, as previously stated, the injunctive relief claims were dismissed at screening.

The State of Florida is immune from monetary damages based upon the Eleventh Amendment. Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1512-13 (11th Cir. 1986). This is so because the Eleventh Amendment of the U.S. Constitution bars suit against a state in federal court absent valid congressional override, waiver of immunity, or

consent to suit. See Wusiya v. City of Miami Beach, 614 F. App'x 389, 393 (11th Cir. 2015). Section 1983 does not abrogate state sovereign immunity for damage suits; and Florida has not waived its immunity from § 1983 suits. See id. A state and an agency of a state (i.e. the Florida Department of Corrections) are immune from liability under § 1983. See Williams v. Robbins, 153 F. App'x 574, 576 (11th Cir. 2005). Suits for nominal damages against state officers in their official capacities are included in this Eleventh Amendment bar. See Simmons v. Conger, 86 F.3d 1080, 1086 (11th Cir. 1996) (district court erred in awarding nominal damages against a judge sued in his official capacity because it was barred by Eleventh Amendment).

Here, it is appropriate to dismiss all official capacity claims; no remedies are available. The abuse did not continue after Hoke left FSH, the injunctive relief claims were dismissed, and monetary damages are not available. Defendants, as former medical providers at FSH, may have been state officials but, as a matter of law, they are immune from suit in their official capacities. Nonetheless, the individual capacity claims remain. Defendants are sued for monetary damages for violating Hoke's constitutional rights when they were state actors at the time of injury. Hoke's claims are not ambiguous; rather, his allegations against Murphy include graphic details of

sexual assaults by her, attempts to cover up the acts, and the futility of getting assistance from Dr. Baluga. See generally, ECF No. 23.

### D. Eighth Amendment Claims and the Ability to Recover Money Damages in the Absence of Serious Physical Injury.

Defendants suggest, in part, that the Eighth Amendment claims cannot survive because Hoke was a pretrial detainee not a convicted inmate while at FSH; and FSH is not a prison. ECF No. 82, p. 15. They also argue the allegations are presented in a shotgun pleading. Id. The Eighth Amendment explicitly prohibits the imposition of cruel and unusual punishment. It is well-settled that prison officials violate the Eighth Amendment through "the unnecessary and wanton infliction of pain." Farmer v. Brennan, 511 U.S. 825, 835 (1994). The Eleventh Circuit recognizes that "severe or repetitive sexual abuse" by prison officials can violate the Eighth Amendment. Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006). "The lack of serious physical injury, considered in a vacuum, cannot snuff out Eighth Amendment sexual-assault claims." Sconiers v. Lockhart, 946 F.3d 1256 (11th Cir. 2020).

Because Hoke was a pretrial detainee during his commitment at FSH, his allegations are governed by the Due Process Clause of the Fourteenth Amendment. Jackson v. West, 787 F.3d 1345, 1352 (11th Cir. 2015). Still, the minimum standard for pretrial detainees is the same as allowed by the Eighth Amendment for prisoners. Id. Although, at screening, the Court

determined that the Eighth Amendment claims were sufficient to proceed, the law is the same under both standards and cases involving each are used interchangeably. Hamm v. DeKalb County, 774 F.2d 1567, 1573-74 (11th Cir. 1985) ("Certainly states may not impose on pretrial detainees conditions that would violate a convicted prisoner's [E]ighth [A]mendment rights."). Murphy's alleged acts of sexual intercourse with Hoke, while he was medicated or heavily sedated, are unreasonable and sufficiently present a claim of excessive use of force under § 1983.

    Hoke sufficiently alleged a constitutional violation; thus, the state tort claims against Murphy survive. When allegations are sufficient to state a claim under § 1983 for excessive force, they sufficiently state the parallel claim of battery under Florida law. Detris v. Coats, 523 F. App'x 612 (11th Cir. 2013) (citing City of Miami v. Sanders, 672 So. 2d at 47 (Fla. 3d DCA 1996) ("[i]f excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery")). Sexual assault is tortious conduct in Florida. Malicki v. Doe, 814 So. 2d 347 (Fla. 1st DCA 1997). "Florida law equates sexual battery with an intentional tort." Doe v. Celebrity Cruises, Inc., 394 F.3d 891 (11th Cir. 2004) (citations omitted). Mental and emotional damages are recoverable "when a prisoner can

demonstrate the commission of a sexual act as the basis for the damages he seeks." Sconiers, 946 F.3d at 1259. This claim should proceed.

E. The Failure to Protect Claims against Dr. Baluga, in Her Individual Capacity, Should Be Dismissed

An official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal quotation marks omitted); see also Farmer v. Brennan, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). As to the first element, the alleged condition must be "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). The second element contains a subjective and objective component. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (citations omitted). The subjective component is satisfied by evidence that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and drew the inference. Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007) (citing Farmer, 511 U.S. at 837). The objective component is satisfied by evidence that the official "responded to the known risk in an unreasonable

manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks and citation omitted). A prisoner may advance an Eighth Amendment claim for failure to protect under two different theories, a "particularized risk" theory or a "dangerous conditions" theory. See Estate of Owens v. GEO Group, Inc., 660 F. App'x 763, 769 (11th Cir. 2016) (per curiam) (unpublished but recognized as persuasive authority). Under the "particularized risk" theory, which applies to Hoke's claim, he may show that he was the target of a specific threat or danger and that Dr. Baluga was subjectively aware of the individualized danger yet failed to act to alleviate that risk. See id. Finally, there must be proof of an affirmative causal connection between the actions of the official and the constitutional deprivation. LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993).

Some of Hoke's allegations against Dr. Baluga were vague. He stated:

> Baluga is the medical director . . . and Murphy was one of her staff members she supervised . . . while . . . Hoke resided there. . . Baluga was aware[] of the violation of company and staff policy by Ms. Murphy and . . . [a] co-worker conducting sexual battery on patients with mental disorder[s] and taking advantage of heavily sedated patients with no way to fight back or come to a proper response . . . Baluga refused to take disciplinary action against both of her employees and allowed the criminal activities to continue[] under her care. .. . every staff member[] and patients knew . . . but still nothing was done to prevent any further abuse . . .

ECF No. 23, p. 3. Hoke claimed "Baluga is obligated by law to follow all safety rules, procedures and regulations to protect their patient[s] [and] detainees . . . [and] must maintain a safe environment," conduct proper screenings and performance evaluations, and view surveillance video. Id., pp. 12-13.

The allegation might be construed as attempt to present claims against Dr. Baluga under a theory of *respondeat superior*, as Defendants suggest. ECF No. 82, p. 13. True, Hoke did not allege sufficient facts to support such a claim. But Defendants ignore the Court's screening order; the only claim that survived against Dr. Baluga was the failure to protect claim. ECF No. 28, pp. 13-14. Hoke alleged that two nurses, Murphy and "Monica" covered for each other and served as lookouts for one another while abusing patients; "Monica," allegedly, became pregnant by a patient. Id., p. 10. Hoke claimed he "tried to exhaust his administrative remedies by informing Dr. Baluga . . . [and] Murphy to stop" the sexual abuse. Id., p. 7. Despite Hoke's attempts to inform Dr. Baluga and her access to surveillance cameras, Dr. Baluga "closed her eyes to the[] sexual abuse" and "condone[d], overlook[ed] or justified [the] criminal activity." Id., pp. 10, 13. Hoke asked Dr. Baluga for grievance forms to file a complaint, but she refused to acknowledge him or investigate his complaints. Id., p. 13. Baluga "refus[ed] to investigate, train, and contact law enforcement on sexual battery . . . she totally disregarded

the safety and protection of [Hoke] and others in the state hospital." Id., p. 14. The failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." Taylor v. Adams, 221 F. 3d 1254, 1259 (11th Cir. 2000). But the compilation of facts Hoke presented – his attempt to get help from Dr. Baluga, Dr. Baluga denied him access to the grievance process, Murphy and Nurse Monica covered for each other in order to avoid detection, and that others (both staff and patients) reported the incidents to Dr. Baluga, *all which are presumed true*, is sufficient to put a reasonable officer on notice that there was a substantial – and particularized -- risk of harm to Hoke. Hoke is not required to provide a detailed account. Twombly, 550 U.S. at 555. At this stage of the litigation, on a motion to dismiss, Hoke has alleged enough to state a claim.

## VI. Conclusion and Recommendation

It is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss, ECF No. 82, should be **DENIED, in part,** and **GRANTED, in part** as follows:

1. Defendants' request to preserve arguments relating to Hoke's individual capacity claims are abandoned and should be **DENIED** pursuant to Fed. R. Civ. P. 12(g)(2).

2. The dismissal of Hoke's injunctive- and declaratory relief claims should be **DENIED as MOOT**.

3. The dismissal of the operative complaint for failure to exhaust administrative remedies should be **DENIED**.

4. The dismissal of all official capacity claims should be **GRANTED**.

5. The First Amendment-, excessive force-, and state tort claims of sexual battery; and the claims for monetary-, mental-, and emotional damages against Defendant Murphy, in her individual capacity, should **PROCEED**.

6. The claim against Defendant Baluga for failure to protect, in her individual capacity, should **PROCEED**.

**IN CHAMBERS** at Tallahassee, Florida March 16, 2023.

s/ Martin A. Fitzpatrick
MARTIN A. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).